

## NUMBER 13-07-104-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

ROGER RODRIGUEZ,                                                 **Appellant,**

**v.**

THE STATE OF TEXAS,                                             **Appellee.**

### On appeal from the 319th District Court
### of Nueces County, Texas

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Vela

Appellant, Roger Rodriguez, was indicted for possession of less than one gram of methamphetamine,[1] with a habitual-felony-offender enhancement.[2] A jury found him guilty

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (Vernon 2003).

[2] *See* TEX. PENAL CODE ANN. § 12.42(a)(2) (Vernon Supp. 2008).

of the offense. After Rodriguez pleaded true to the enhancements, the trial court sentenced him to sixteen years in prison. By three issues, Rodriguez complains of ineffective assistance of counsel; challenges the factual sufficiency of the evidence; and argues the trial court erred in denying his motion to suppress and in failing to include a jury instruction pursuant to article 38.23 of the code of criminal procedure. We affirm.

## I. Factual Background

*A. State's Evidence*

On July 5, 2006, Thomas A. Nichols, II, a Corpus Christi police lieutenant, was watching the Padre Motel based on information received by the police about possible drug dealing at the motel. At about 5:00 a.m., Nichols saw a Dodge Durango enter the motel's parking lot. He lost sight of the Durango, but after less than five minutes, he saw it turn from the motel's parking lot into the access road's right-hand lane and go eastbound towards Flour Bluff Drive. As the Durango approached the turnaround, it went from the right lane across two lanes of traffic into the far left lane, without signaling. Nichols stopped the vehicle based on this traffic violation.[3] Rodriguez, the Durango's driver, gave Nichols his birth date and said his name was James Rodriguez. He said he did not have his driver's license with him. Officer Javier Cantu, who arrived at the scene shortly after the stop, searched police records for the name and birth date but did not obtain any results with that identification. At Nichols's request, Rodriguez got out of the Durango, and Nichols patted him down for weapons. Afterward, Rodriguez gave his true name to Cantu, who later determined that Rodriguez had an outstanding warrant. Rodriguez was arrested at

---

[3]A driver is required to "use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position." TEX. TRANSP. CODE ANN. § 545.104 (Vernon 1999); and an officer who sees a traffic violation is authorized to stop the vehicle. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992).

2

the scene for the outstanding warrant and for failure to identify as a fugitive. During the search incident to arrest, Nichols "found a small, little bitty, maybe, one-inch square Ziploc baggie" in Rodriguez's pocket. Based upon his experience and training, Nichols said it was "very consistent" with "crystal methamphetamine or ice." The substance was tested at two laboratories, and the tests were "positive for methamphetamine or ice both times." The "whole weight" was under one gram.

Officer Todd Beach testified that the methamphetamine, along with the baggie it was found in, weighed .22 grams. The actual weight of the drug, according to the DPS lab report, was .01 grams. He said he could test as little as .001 grams of methamphetamine.

Ruben Rendon, Jr., a drug technician supervisor at the Texas Department of Public Safety crime lab, testified that his laboratory findings regarding this case showed: "'Exhibit 1, net weight, 0.01 grams. Result: Contains methamphetamine.'" He testified that methamphetamine is included in Penalty Group 1 of the Texas Controlled Substances Act.

*B. Appellant's Evidence*

Amada Eyre testified on Rodriguez's behalf. At the time of trial, Eyre was Rodriguez's fiancee. Eyre testified she owned the Durango that Rodriguez was driving when Nichols stopped and arrested him. According to Eyre, on July 4, 2006, the day before Rodriguez's arrest, he and Steve Packard were repairing the Durango at a business called "Packard Tire." They finished working on the vehicle about 4:00 a.m. the next day. Afterwards, Rodriguez, Eyre, and Packard went to the Padre Motel because Packard had to talk to someone there. While at the motel, she and Rodriguez stayed in the Durango while Packard went into a room. About three minutes later, Packard returned to the Durango, and all three then left the motel to go to a Circle K.

3

Their trip to the Circle K was interrupted when a police officer pulled them over. Eyre testified that when the officer saw Packard sitting in the Durango's back seat, he said, "'Well, if it isn't Flour Bluff's favorite meth head, Mr. Packard.'" The officer then asked Rodriguez why he was "driving recklessly and dangerously." Rodriguez tried to explain that they had been working on the Durango's brakes, that it did not have any brakes, and that he was trying to avoid hitting the car that was parked at the light. The officer said that there was no car at the light and that Rodriguez had made an illegal lane change. She said that when the officer searched Rodriguez, the officer "pulled out a baggie out of his [Rodriguez's] back pocket." She described the baggie as "a small little black Ziploc baggie," and she thought it was the baggie that "came with the nuts and bolts." She said she saw the baggie at Packard Tire on the floor with the springs, nuts, and bolts that she and Rodriguez were picking up. She handed the baggie to Rodriguez, and he put it in his pocket. She did not look at the baggie before she handed it to him.

On cross-examination, she testified that Packard's "drug of choice" was methamphetamine. She testified that State's exhibit 2, the baggie Nichols found in Rodriguez's pocket, looked like the baggie that she handed Rodriguez at Packard Tire. She thought she was handing Rodriguez the baggie so that he could put nuts and bolts into it. She said she told the officer that the baggie that he had found on Rodriguez was for nuts and bolts.

The defense did not call Rodriguez or Packard to testify.

*C. State's Rebuttal*

Nichols testified that Eyre did not tell him that she gave the baggie to Rodriguez. He said Packard did not say where the baggie came from. He did not recall calling Packard a "meth head." However, he knew that Packard had used methamphetamine in

4

the past.

## II. Discussion

*A. Factual Sufficiency*

By issue one, Rodriguez argues the evidence is factually insufficient to show he intentionally or knowingly possessed methamphetamine. In reviewing a factual sufficiency claim, we review the evidence in a neutral light rather than the light most favorable to the verdict. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007) (citing *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000)). Evidence is factually insufficient if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust, or if the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Neal*, 256 S.W.3d at 275; *Roberts*, 220 S.W.3d at 524 (citing *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). We do not reverse for factual insufficiency if the greater weight and preponderance of the evidence actually favors conviction. *Neal*, 256 S.W.3d at 275; *Roberts*, 220 S.W.3d at 524 (citing *Watson*, 204 S.W.3d at 417).

*1. Applicable Law*

To obtain a conviction for possession of methamphetamine in this case, the evidence must have shown that Rodriguez: (1) knowingly or intentionally possessed a controlled substance listed in Penalty Group 1, *see* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (Vernon 2003), § 481.102(6) (Vernon Supp. 2008) (methamphetamine is a Penalty Group 1 substance); (2) had "actual care, custody, control, or management" of the methamphetamine, *see id.* § 481.002(38) (Vernon Supp. 2008) (defining possession); and (3) in an amount less than one gram. *See id.* § 481.115(b) (prohibiting possession of

Penalty Group 1 substance in amount less than one gram).

In *Evans v. State*, the court of criminal appeals stated:

> [I]n a possession of a controlled substance prosecution, "the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. This is the so-called "affirmative links" rule which protects the innocent bystander–a relative, friend, or even stranger to the actual possessor–from conviction merely because of his fortuitous proximity to someone else's drugs. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., "links"), may well be sufficient to establish that element beyond a reasonable doubt. It is, as the court of appeals correctly noted, not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial.

202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006) (quoting *Evans v. State*, 185 S.W.3d 30, 34 (Tex. App.-San Antonio 2005)) (footnotes omitted).

*2. Analysis*

In this case, a rational jury could have determined the following from the evidence: (1) Rodriguez drove to the Padre Motel, disappeared from Nichols's sight for less than five minutes, and then left the motel; (2) the police had previously received information about drug dealing at this motel; (3) within minutes after Rodriguez left the motel, he was stopped, and when first asked to identify himself, gave police a false name; (4) a search revealed a small Ziploc baggie in Rodriguez's pocket; (5) test results showed the Ziploc baggie contained .01 gram of methamphetamine; and (6) methamphetamine is a Penalty Group 1 substance.

The contrary evidence showed that: (1) the evening before Rodriguez's arrest, he, Eyre, and Packard were repairing the Durango; (2) Eyre found the baggie on the floor of Packard Tire, and thinking it was for nuts and bolts, she gave it to Rodriguez; (3) she did

6

not know what was in the baggie when she gave it to Rodriguez; and (4) she told Nichols that the baggie he found in Rodriguez's pocket was for nuts and bolts.

Based upon a neutral review of all the evidence, we hold that a rational trier of fact could have found beyond a reasonable doubt that Rodriguez exercised control, management, or care over the methamphetamine and knew that it was contraband. *See Evans*, 202 S.W.3d at 164-65; *see also Hargrove v. State*, 211 S.W.3d 379, 387 (Tex. App.–San Antonio 2006, pet. ref'd) (defendant gave false name indicating consciousness of guilt). We conclude that the evidence is not so obviously weak or so greatly outweighed by contrary evidence that it would not support the finding that Rodriguez knowingly or intentionally possessed the methamphetamine. The jury, as the trier of fact, is the sole judge of the weight and credibility of the evidence and could have disbelieved Eyre's testimony about how the baggie got into Rodriguez's pocket[4]. Thus, the evidence is factually sufficient. *See Watson*, 204 S.W.3d at 414-17. Issue one is overruled.

*B. Motion to Suppress and Article 38.23 Instruction*

By issue two, Rodriguez argues the trial court erred in denying his motion to suppress and in failing to include a jury instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure. The State asserts that Rodriguez waived any complaint regarding suppression. We agree. Rodriguez filed a pre-trial motion to suppress the methamphetamine, and after a pre-trial suppression hearing, the trial court denied the motion. These actions alone would have preserved the suppression issue for review without further objection by Rodriguez during the trial. At trial, however, when the State offered the methamphetamine into evidence, defense counsel stated, "No objection, Your

---

[4]*See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).

Honor." The methamphetamine was admitted into evidence.

The court of criminal appeals has held in similar situations that the suppression issue was not preserved for review. *See Moody v. State*, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992); *Dean v. State*, 749 S.W.2d 80, 82-83 (Tex. Crim. App. 1988); *Harris v. State*, 656 S.W.2d 481, 484 (Tex. Crim. App. 1983); *McGrew v. State*, 523 S.W.2d 679 (Tex. Crim. App. 1975). When evidence is offered during trial and defense counsel affirmatively represents that he has "no objection" to the evidence, any error in the admission of the evidence is waived even if the defendant had previously preserved the error by a suppression motion and adverse ruling. *Moody*, 827 S.W.2d at 889; *Dean*, 749 S.W.2d at 82-83; *Harris*, 656 S.W.2d at 484; *McGrew*, 523 S.W.2d at 680-81. Because counsel affirmatively stated that he had no objection to the introduction of the evidence seized, we hold that the complaint is not preserved with respect to the admission of that evidence.

The terms of article 38.23(a) of the code of criminal procedure are "mandatory, and when an issue of fact is raised, a defendant has a statutory right to have the jury charged accordingly."[5] *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007) (quoting *Murphy v. State*, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982)). However, "[a] defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Id*. As the court of criminal appeals has explained,

> There must be a genuine dispute about a material fact. If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the

---

[5]Article 38.23 provides, in relevant part that, "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005).

> disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct.

*Id.* at 510-11.

Here, the trial court admitted the methamphetamine into evidence, and Rodriguez did not object to the charge.[6] Nevertheless, the possible challenged conduct in this case was the traffic stop by Nichols. The traffic stop was lawful if he had reasonable suspicion to believe that Rodriguez had committed a traffic violation. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) ("An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law."); *State v. Nelson*, 228 S.W.3d 899, 902 (Tex. App.–Austin 2007, no pet.) ("A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention, and it must be justified by reasonable suspicion."). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007) (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)).

At trial, Nichols articulated specific facts that led him to suspect Rodriguez was violating the traffic laws. Specifically, he testified that Rodriguez changed lanes without signaling. At trial, there was no dispute about these facts. One of Rodriguez's passengers, Eyre, testified that after the traffic stop, Nichols told them Rodriguez had made an illegal lane change. She did not deny that Rodriguez left his lane of traffic without signaling. In *Williams v. State,* 726 S.W.2d 99, 100-01 (Tex. Crim. App. 1986), the court

---

[6]The first requirement for obtaining a jury instruction under article 38.23 is that the defendant requests an instruction on a specific historical fact or facts. *Madden v. State*, 242 S.W.3d 504, 511 (Tex. Crim. App. 2007).

held that police may conduct a search incident to an arrest following a traffic stop. They may order passengers to exit their car pending completion of the stop,[7] as well as search the person of the individual being arrested. *See McGee v. State,* 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). Nichols's discovery of the baggie in Rodriguez's pocket after stopping him for a traffic offense falls within the scope of a valid search incident to an arrest. *See Barrow v. State*, 241 S.W.3d 919, 922 (Tex. App.–Eastland 2007, no pet.).

Thus, no genuine dispute exists about a material fact. Because there is no disputed factual issue, the legality of the conduct is determined by the trial court alone, as a question of law. *See Madden*, 242 S.W.3d at 510-11. The undisputed facts are sufficient to support the lawfulness of the challenged conduct; therefore, the trial court did not err in failing to submit the article 38.23 instruction to the jury, because it was not material to the ultimate admissibility of the evidence. *See id.*; *see also Reynosa v. State*, 996 S.W.2d 238, 240 (Tex. App.–Houston [14th Dist.] 1999, no pet.) (defendant not entitled to article 38.23 instruction when he did not dispute officer's testimony that defendant was speeding and failed to remain in single lane of traffic); *Markey v. State*, 996 S.W.2d 226, 230-31 (Tex. App.–Houston [14th Dist.] 1999, no pet.) (defendant not entitled to article 38.23 instruction because he did not contradict traffic violation that officer relied upon in pulling him over). We overrule issue two.

*C. Ineffective Assistance of Trial Counsel*

In issue three, Rodriguez complains that his trial counsel was ineffective for failing to request a jury instruction pursuant to article 38.23 and for failing to impeach the officers' trial testimony with their prior testimony given at the suppression hearing. In order to determine whether Rodriguez's trial counsel rendered ineffective assistance at trial, we

---

[7]*See Maryland v. Wilson,* 519 U.S. 408, 415 (1997).

must first determine whether he has shown counsel's representation fell below an objective standard of reasonableness and, if so, whether there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Rodriguez must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Stafford v. State,* 813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991).

### 1. Failure to Request Article 38.23 Instruction

When the trial court determines evidence was obtained illegally, it must exclude that evidence from the jury's consideration. *Atkinson v. State*, 923 S.W.2d 21, 23 (Tex. Crim. App. 1996). However, if there are disputed fact questions concerning the legality of a seizure, article 38.23 requires the trial court to so instruct the jury:

> [I]f [it] believes, or has a reasonable doubt, that the evidence was obtained in violation of . . . any provisions of the Constitution or laws of the State of Texas, or the Constitution or laws of the United States of America . . . then and in such event, the jury shall disregard any such evidence so obtained.

*Id*.; *see Reynolds v. State*, 848 S.W.2d 148 (Tex. Crim. App. 1993).

Rodriguez does not challenge the legality of the traffic stop by point of error.[8] At trial, Nichols testified he stopped Rodriguez after seeing him commit a traffic violation; specifically, changing lanes without using his turn signal. The jury was presented with undisputed evidence that Nichols stopped Rodriguez after observing him commit a traffic violation. Because Nichols properly stopped Rodriguez, the subsequent search was proper. Because Rodriguez has failed to establish that he was entitled to an Article 38.23

---

[8]We note that in issue two, Rodriguez argued that Nichols did not have probable cause to search him. However, Rodriguez did not challenge the legality of the traffic stop.

11

instruction; therefore, we cannot conclude that his trial counsel was ineffective for not requesting one.

     2. *Failure to Impeach Officers' Testimony with Their Prior Testimony from the Suppression Hearing*

At the suppression hearing, Nichols testified that Rodriguez "went from the right lane across the left lane and into the far left turn lane without using its turn signal at all." He testified he stopped Rodriguez for this traffic violation. Cantu testified he arrived at the scene after Nichols stopped Rodriguez.

This testimony does not contradict the trial testimony of Nichols and Cantu. Thus, trial counsel had no ground for impeaching the officers' trial testimony with their suppression-hearing testimony. Accordingly, Rodriguez has failed to show that trial counsel's representation fell below an objective standard of reasonableness or that there is a reasonable probability that the result would have been different but for counsel's alleged error. *See Strickland,* 466 U.S. at 688. Issue three is overruled.

### III. Conclusion

The trial court's judgment is affirmed.

                                          ROSE VELA
                                          Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 29th day of August, 2008.